### KNEELAND v. STAPELY.
### No. 1108.

United States District Court
W. D. Michigan, S. D.
April 27, 1949.

Frederick E. Stiles, of Grand Rapids, Mich., and Edward E. Barthell, Jr., of Chicago, Ill., for plaintiff.

Uhl, Bryant, Slawson & Wheeler and Marshall M. Uhl, both of Grand Rapids, Mich., Beverly B. Vedder, of Chicago, Ill., and Fred C. Cogshall, of South Haven, Mich., for defendant.

STARR, District Judge.

Plaintiff, a resident of Chicago, Illinois, sues to collect a commission of $40,000 for his efforts in attempting to effect a sale of defendant's stock in the Everett Piano Company. On January 26, 1947, plaintiff ran the following advertisement in the Chicago Tribune:

"$100,000 to $2,500,000

"One of our clients (an Eastern investment group) wants to buy an established manufacturing company located in the Middle West. Will pay a fair price plus an additional amount for good will and going concern value.

"We invite manufacturers to consult us, without obligation. All negotiations will be strictly confidential. Ask your banker about us.

> "F. N. Kneeland
> "209 South La Salle Street
> "Chicago."

Defendant, who was president and owned or controlled all of the capital stock of the Everett Piano Company of South

Haven, Michigan, answered this advertisement and, after some negotiations, wrote plaintiff on February 26, 1947, as follows:

"Enclosed you will find a report covering the operations of Everett Piano Company.

"Referring to our conversation of February 21st, the sale price is $900,000.

*"If a sale of Everett assets at terms and conditions suitable to the writer are arranged through your efforts, you are to receive five per cent of the proceeds.*

*"This letter is not to be considered as an option. I also consider myself at liberty to withdraw the Company from sale at any time."*

On February 28th plaintiff replied, stating: "Your letter of February 26 with a report on the Everett Piano Company has been received. The letter covering my commission is entirely satisfactory." These two letters constituted the contract between the parties, on which the present suit is based.

Plaintiff's efforts to sell defendant's stock in the Everett Piano Company to two prospective purchasers were unsuccessful. He then attempted to sell the stock to the Aeolian American Corporation of New York city, which was controlled by the American Piano Company and the Aeolian Corporation of Connecticut. In his effort to make this sale, plaintiff sought the help of his friend, F. O. March, who was a director of the Aeolian Corporation of Connecticut. On October 17, 1947, he wrote March as follows:

"Confirming my telegram of today, I wired you that Mr. Stapely (defendant) and I would arrive in New York Thursday morning, October 23. * * *

"I have a letter from Mr. Stapely in which he agrees to pay me a fee of five (5%) per cent of the total sales price involved, *when, as, and if a sale of the stock of Everett Piano Company is consummated through my efforts.* I, therefore, agree, in consideration of your services, to divide the total commissions or fees received from Stapely in the event we are successful in our negotiations with Amer-

ican Piano Company and/or any of its affiliated enterprises on a fifty-fifty basis."

On October 22, 1947, plaintiff and defendant went to New York city, and the next morning, October 23d, they first met with Richard W. Lawrence, a director and chairman of the board of directors of the Aeolian American Corporation. Lawrence and defendant discussed the matter of Aeolian American purchasing defendant's stock in the Everett Company, but they were unable to agree upon a price and the terms of purchase. At a later conference that afternoon defendant and Lawrence orally agreed upon a net price of $800,000 for the stock, and they also agreed that Aeolian American, in addition to that amount, would assume and pay plaintiff's commission of five per cent on the sale price of the stock, amounting to $40,000. At about that point in the conference Lawrence called in W. Lee White, an attorney, who was also vice-president and treasurer of Aeolian American. There was some discussion between Lawrence, White, and others as to whether the $40,000 commission to be paid plaintiff by Aeolian American would be deductible by that company as an operating expense for tax purposes. The Aeolian American officials insisted that the oral arrangement between Lawrence and defendant be placed in writing, and White dictated an agreement in the form of a letter addressed to defendant, to be signed by Aeolian American specifying the price of $800,000 and outlining the terms of the proposed sale of defendant's stock. This agreement, herein referred to as the first agreement, a copy of which was given to defendant that afternoon, provided among other things: "It is understood that we (Aeolian American Corporation) will pay Mr. F. N. Kneeland (plaintiff) * * * the sum of $40,000 on a maturity basis that is mutually satisfactory."

The defendant testified relative to this first agreement, dictated by White on October 23d, in part as follows:

"Mr. White insisted on an agreement being drawn up. * * *

"I told him that even though an agreement was drawn, anything that was discussed would have to be referred to my

attorneys. Mr. White asked me the name of my attorneys. I told him 'Pope & Ballard, in Chicago.' My purpose at the time was merely to hold it while Mr. White dictated his version of the agreement, which I would later refer to my attorneys. * * *

"I made no comments on it whatsoever, except that while it was being dictated I reiterated to Mr. White that under no circumstances did I guarantee taxes, and his statement was that would have to be taken up with Mr. Lawrence, who made the original negotiations. I was very definite on the point. There was nothing else stated about it except some remarks about further guarantees, to which I did not agree. I took the agreement with me, with the idea of taking it to Chicago, and having it referred to my attorneys. * * *

"Mr. White dictated this draft, the first one. * * * We did not discuss it, except that I said I would not make any guarantees, but it was Mr. White's idea that he was putting down on paper, and not mine. I would certainly have dictated a lot different arrangement."

The parties met again the following afternoon, October 24th, and White presented what he termed a "revised agreement" for defendant's signature. This agreement, which had been revised overnight by White on behalf of Aeolian American, was materially different in several particulars from the first agreement which White had dictated in defendant's presence the day before. The most glaring difference was that the so-called revised agreement entirely omitted the provision of the first agreement that Aeolian American would assume and pay plaintiff the $40,000 commission. The revised agreement also changed other provisions of the first agreement, and placed defendant in the position of representing or warranting certain facts which might have affected his personal liability relative to tax claims and other claims against the Everett Piano Company. When questioned by the court, plaintiff testified that he did not know why the provision in the first agreement for payment of his commission of $40,000 by Aeolian American was omitted from the revised agreement. He later changed his

testimony by stating in substance that it was understood that Aeolian American would give him a separate letter agreeing to assume liability for his commission. However, defendant denies knowledge of any such arrangement. In any event, the agreement as revised and submitted to defendant for his signature on the afternoon of October 24th materially changed certain provisions of the first agreement and entirely omitted the provision of the first agreement which would have obligated Aeolian American to pay plaintiff's commission. Defendant refused to sign the revised agreement and stated that he would submit it to his attorneys in Chicago. He testified as to his final interview with Mr. Lawrence and Mr. White as follows:

"Mr. White handed me this redrafted so-called agreement, which he had taken the liberty of redrafting on his own responsibility, and I read it as carefully as I could, and I saw that several very substantial changes had been made. I did not object to this, * * * because I still was under the impression that this was going to be referred to my counsel, that we would thresh out an entirely different arrangement, * * * Mr. White urged me to sign, very definitely. I felt that I was being rushed, almost to the point of placing a pen in my hand. Mr. Lawrence came in and asked me what I thought about the agreement, and I said: 'It is going to be referred to my counsel, and also my family, as a matter of courtesy, and that I would not guarantee taxes, or any other matters; that I still was of the opinion that I would only sell the company by selling the stock and receiving cash in return, and notes, and nothing more.' Mr. Lawrence then made the statement: 'According to your understanding then, you wish to cut the matter off—so far as liabilities, very definitely. * * *' I said: 'Yes, that is exactly my understanding,' and I put the agreement in my pocket, left the room, and that is the last I have seen of them."

Defendant returned to his home in Michigan, and a few days later, on October 28th, he advised plaintiff and the Aeolian American Corporation that the stock deal was "definitely off" and that he had decided to

discontinue all negotiations. The next day, October 29th, F. O. March, the director of Aeolian Corporation of Connecticut, with whom plaintiff had agreed to split his commission, wired defendant as follows: "My commission on Everett sale is earned and I assume that you will make prompt payment." Defendant immediately wrote March stating: "I know nothing of any commission arrangement between you and Mr. F. N. Kneeland." Plaintiff also asserted a claim against defendant for $40,000 commission and, payment not being made, began the present suit on January 16, 1948.

In his complaint and amendment thereof plaintiff alleged that through his efforts he had obtained a buyer who was ready, willing, and able to purchase defendant's stock in the Everett Piano Company; that defendant had agreed to sell his stock to the Aeolian American Corporation for $800,000; and that under the agreement embodied in defendant's letter of February 26, 1947, plaintiff was entitled to a commission of $40,000 together with interest thereon. Defendant answered, denying in substance that he had agreed to sell his stock in the Everett Company to the Aeolian American Corporation and denying all liability to plaintiff. The case was tried before the court without a jury.

It is unnecessary to mention plaintiff's motion to strike certain portions of defendant's amended answer or his motion made at the conclusion of the trial to strike certain portions of the defendant's testimony, other than to say that both motions are denied. From the evidence presented the court makes the following findings:

### Findings of Fact

1. That defendant owned or controlled all of the issued and outstanding capital stock of the Everett Piano Company, a corporation, of South Haven, Michigan.

2. That the contract between plaintiff and defendant was embodied in defendant's letter of February 26, 1947, to plaintiff, hereinbefore quoted, and plaintiff's reply on February 28, 1947.

3. That it was mutually understood between the parties that the term "Everett assets" mentioned in the third paragraph of defendant's letter of February 26, 1947, to plaintiff, referred to the capital stock of the Everett Piano Company, all of which was owned or controlled by defendant.

4. That the term "sale of Everett assets" mentioned in the third paragraph of defendant's letter of February 26, 1947, was understood and construed by the parties to mean a consummated and fully completed sale of defendant's stock in the Everett Piano Company. This finding is evidenced by defendant's testimony and also by plaintiff's letter to F. O. March dated October 17, 1947, in which he stated: "I have a letter from Mr. Stapely (defendant) in which he agrees to pay me a fee of five (5%) per cent of the total sales price involved *when, as, and if a sale of the stock of Everett Piano Company is consummated* through my efforts." This finding is further evidenced by the express provision in their contract that plaintiff was to receive a commission of *"five per cent of the proceeds"* of the sale.

5. That plaintiff arranged the conference between defendant and the officers of the Aeolian American Corporation in New York city; that the corporation insisted that the oral arrangement between its chairman, Richard Lawrence, and defendant for its purchase of defendant's stock in the Everett Piano Company be embodied in a written agreement; that the final and revised form of written agreement prepared by Aeolian American and submitted to defendant for his signature on October 24, 1947, was materially different from the oral arrangement between Lawrence and defendant and materially different from the first agreement dictated in defendant's presence, and was not "at terms and conditions suitable" to defendant. That defendant refused the offer of Aeolian American Corporation as embodied in its final and revised form of agreement and refused to sign the agreement.

6. That defendant made no valid and binding agreement to sell his stock in the Everett Piano Company to Aeolian American Corporation.

7. That no sale of defendant's stock was ever consummated and completed through plaintiff's efforts.

8. That plaintiff did not produce a purchaser ready, willing, and able to buy defendant's stock in the Everett Piano Company "at terms and conditions suitable" to defendant, as provided in paragraph 3 of defendant's letter of February 26, 1947, to plaintiff.

9. That defendant withdrew his stock in the Everett Piano Company from sale on October 28, 1947.

### Conclusions of Law

1. That this court has jurisdiction of the parties and of the subject matter involved.

2. That defendant's letter of February 26, 1947, to plaintiff, hereinbefore quoted, and plaintiff's reply dated February 28, 1947, constituted the contract between these parties.

3. That under their contract plaintiff would be entitled to a commission only if, through his efforts, a sale of defendant's stock in the Everett Piano Company "at terms and conditions suitable" to defendant was consummated and completed.

4. That under their contract, if plaintiff effected a consummated and completed sale of defendant's stock "at terms and conditions suitable" to defendant, he would be entitled to a commission of "five per cent of the proceeds" of the sale.

5. That plaintiff did not consummate and complete a sale of defendant's stock to the Aeolian American Corporation "at terms and conditions suitable" to the defendant.

6. That defendant was entitled to refuse and did refuse to accept the offer of Aeolian American Corporation as embodied in its final and revised form of agreement submitted to him on October 24, 1947.

7. That plaintiff did not produce a purchaser ready, willing, and able to purchase defendant's stock "at terms and conditions suitable" to defendant.

8. That under his contract with plaintiff, defendant was entitled to withdraw his stock in the Everett Piano Company from sale at any time, and that he did withdraw it from sale on October 28, 1947.

9. That plaintiff did not perform services which, under the terms of his contract with defendant, entitled him to a commission.

10. That plaintiff is not entitled to recover any commission or compensation from defendant.

Judgment of no cause of action will be entered for defendant.